et al., numbers 07-2828 and 07-2848. I have Mr. Knorr and Mr. Goldhaber. I have Mr. Goldhaber and Mr. Goldhaber. May it please the Court, my name is John Knorr. I'm with the Pennsylvania Attorney General's Office and I represent the four state police officers who are the appellants in this matter. I'd like to say first that I appreciate the Court's courtesy in putting us at the end of the list and with the Court's permission, I'd like to reserve two minutes for rebuttal. Your Honors, this Court and the Supreme Court have frequently cautioned that the federal judiciary should not be made into the forum for reviewing all state personnel employment decisions and with all due respect to the district court, we think that that is just what was allowed to happen in this case. On the merits, we're appealing from a complicated multi-part judgment that awarded separate amounts to the plaintiff for separate perceived violations in the areas of First Amendment retaliation, procedural and substantive due process and equal protection. And also retaliation for filing the lawsuit. Yes, well, consider that all part of the First Amendment, Your Honor. Retaliation for filing the lawsuit? That was a First Amendment violation. The petitioning clause is part of the First Amendment. I got you, Your Honor. We also have an appeal from the fees award, but unless the Court has questions about that, I'll leave the fees issues to the briefs and just deal with the merits today. On the First Amendment retaliation issue, we think that that award rests in large part, as you pointed out, not entirely, but in large part on speech which in our view is part of the First Amendment and therefore can't serve as the predicate for a retaliation claim. Do you dispute, though, that the speech in this case pertained to matters of public concern? I don't think we even have to reach that issue, Judge Cowell, because the threshold issue is was the plaintiff speaking as a citizen or as an employee? And if, as we think, he was speaking as an employee, then you never get to the question of public concern. We're relying, of course, on the Supreme Court's Garcetti case that when employees speak as employees, they are not speaking as citizens and their comments, whatever they may be, aren't. Garcetti doesn't affect the retaliation claim, does it? I'm sorry? Garcetti doesn't affect the retaliation claim, does it? Yes, Garcetti governs most of the retaliation claim. I may be misleading you. If there were claims for internal complaints of going up the chain and being retaliated for that, that's one thing. Right. But for filing the lawsuit, does Garcetti affect the filing of the lawsuit? No, it does not, Your Honor. Okay. It does not. But let me deal first with the part that Garcetti does govern. What we have here is Mr. Skresge is a state police officer and not just an officer but a corporal with, in his own description, the broadest supervisory responsibilities at the station where he worked. And what he says he did was that on several occasions he was approached by another officer and asked to fix an investigation. And he reported that to his immediate superior. He says on another occasion he saw a fellow officer. Yeah. Most of these things came out and the jury was, you know, except for one claim, as I recall, they found against your clients. They did. And it's our submission that that should never have even gone to the jury. The jury was instructed as to whether or not what he was doing was within his official duties, the question. They were instructed as to that, weren't they? Yes, they were. Your position is that this was not a jury question under Garcetti. It should have been as a matter of law. We should have. That it was not that it was an employment directly in the chain of command relationship. Yes. Yes, exactly. And as I recall, this case was tried after Garcetti came down but just prior to Foraker coming down from our circuit. Is that correct? It was certainly tried. It was tried, yeah, after Garcetti but before Foraker came down. And when the district court had to make this decision, there was little or no guidance from this court or other courts of appeals. Well, the very question of what's an official duty, is that a question of fact or is that a question of law for the court? Well, in Foraker, the court said that it's a mixed question of fact and law. In this case, we think the facts are not disputed. We're relying on Mr. Skruski's own testimony as to what his duties were. And, I mean, that's just common sense, is that police officers investigate crimes. And the man said, I was, you know, in charge of the station here, and this other officer came and said, please fix this investigation that you're doing. Well, how is that not part of his job to report that to his superior? When he's in charge of the station and he sees a subordinate, in his view, not performing properly, and he writes some memos and some reprimands to get to correct her performance, and he tells his superior about that. How can that not be part of his job? That's just common sense, and I'm happy to say common. Let's assume you're right on the Garcetti issues. That is, for going up the chain, that Garcetti now and Foraker now disallows that claim. But let's assume for the moment that the retaliation claim still is extant. It's not retaliation for filing the lawsuit. I'm following you. And why not just remand back for a determination of damages? In other words, a redetermination of damages. Well, because the vast bulk of the evidence in this case concerned the retaliation for the internal comments that we think are covered by Garcetti. All of that evidence, and my friend on the other side doesn't dispute this in his brief, but that evidence had to have been highly prejudicial to my points. So you're saying it was the evidence across the lines on both, actually all of the claims? Sure. There was only a couple pages in this huge transcript that deals with the retaliation for filing the lawsuit claim. What evidence was offered that he was retaliated against by reason of filing this lawsuit? He claims that he had to work seven midnight shifts in a row. And he claims that he was sent out without proper backup to serve a warrant. And I believe that's all. Okay. Was there any evidence as far as the state is concerned that connected those two allegations to the filing of the lawsuit? I know these happen after the suit was filed, but someone's got to work at night, and it's possible he could have worked at night whether he filed a lawsuit or not. Was there anything that, as far as the state is concerned, connected those elements of proof with the lawsuit having been filed? Well, let me say first that we don't attack that finding. The jury found it was causation, and we don't attack it on our appeal. Okay. What there was was Mr. Skrutsky testified, as I recall, that when he first went to his new station where he was under the command of Lieutenant Bryce, Bryce had a conversation with him where he said there will be no hard feelings about the lawsuit. And then he was assigned to seven midnight shifts in a row. Is there any proof that other troopers receive night shifts like that or similar type of work assignments? I don't recall that there's any proof either way on that specific issue. Okay. So you don't dispute that? I think it's weak, but that's what the jury found, and we're not attacking it. The argument is that if you win on the Garcetti issue, nevertheless you're entitled to a retrial on the retaliation for filing because the Garcetti issue tainted the filing case. Yes, and because the jury didn't distinguish between the two in their award. I thought that they make separate verdicts for each. Yeah. I mean, like the retaliation claim was special verdict question eight. Why didn't you object to retaliation for the lawsuit? I'm sorry. Let me deal with this one at a time. They made a separate finding of liability on retaliation for the internal statements versus retaliation for filing the lawsuit. Correct. And four appellants were found liable on the first and only two on the second. But when it came to the monetary award, they just awarded a single lump sum of $100,000 for all of those First Amendment claims. Well, they did that because that's the way the jury interrogatory is read. Sure. Why didn't you ask for separate? Well, I think it would be hard to see what legal error that is, and we don't contend that that was a legal error. There's nothing wrong with the district court asking the jury to give one verdict on all the First Amendment claims or one award. What the error was, was allowing the jury to render a verdict on both protected and unprotected conduct. And the question now is, what's the remedy that's necessary to rectify the results of that error? And we think it's got to be a new trial, as this court said in the Rush case, and other courts have held in similar cases that we've cited in our briefs. But as far as you're concerned, there were two elements of proof concerning the filing of the lawsuit, and there were a plethora of claims on the personnel aspect of the Garcetti claim. Yes, exactly. And, well, you know how juries think. It's the way we all think, that if they did the one, they're likely to do the other. So it was highly prejudicial on the retaliation for filing the lawsuit claim. And as I said before, in their brief, the other side doesn't even dispute that point. I'm sorry, Judge Ambrose? No problem. Let me turn, then, to substantive due process. We think here this, again, should never have gone to the jury. It is squarely governed by this court's decision in the Nicholas case and other similar decisions. It's clear that in order to have a substantive due process claim, you have to have the state must have invaded an interest, which is not merely a property interest but a constitutionally fundamental interest. We say public employment is not a fundamental right. Public employment, even being fired from tenured public employment, isn't such an interest, and the lesser deprivations that are complained about here by definition cannot be. Certainly over time it's not protected. Of course not. Yeah. Procedural due process, a similar situation there. I think we got your point on that. I'm sorry? Go ahead. How about equal protection? I said skip procedural due process. All right. Moving on to equal protection, let me say, first of all, that everything that I said in my brief and everything that I may say here may be quite wrong in a few weeks. I want to alert the Court that there is a case now pending in the Supreme Court which may shed some light on this. It's a case involving whether public employees may even bring Class of 1 equal protection claims, and if they can bring them, then what are the contours of that? Enquist, is that the case? Enquist is the name of the case, E-N-G-P-U-I-S-T. We anticipate a decision, of course, by the time the Court arises for the summer. I can make you a bet on that one. I'm sorry? I can make you a bet on how that will come out. I'm not taking any bets here. We'll supply the Court with a copy as soon as it comes out, and, of course, we'll provide any supplemental briefing that the Court thinks is necessary in light of that. But as the law stands now, we think that the analysis of an equal protection claim is quite different from the other claims that are presented here in that it is the most deferential standard of review, deferential from the government's standpoint. It is probably the most difficult constitutional claim to make out because all that is necessary is a reasonably conceivable set  The actual motive of the decision-maker is constitutionally irrelevant. The facts of the case are not subject to courtroom fact-finding. If the facts of the case are arguable, the inquiry is over, and it terminates in favor of the government. Obviously, there is certainly a conceivable set of facts to justify treating Mr. Skresge differently. We need only look to the circumstances that led to his 10-day suspension. He was, in the state police's view, not a very good employee. That is an arguable set of facts that justify treating him less favorably than others, and that's all you have to have to defeat an equal protection claim under rational basis analysis. But you have a more basic claim. You're claiming that the class of one equal protection claim is something that's never been applied to employment discrimination type of claims. Indeed, it's been pretty much cabined by the Supreme Court in that one area where it was expressed. Well, that's, of course, the issue the Supreme Court is going to decide in inquis. And the Ninth Circuit said, well, public employees just can't bring these. In our brief, we didn't ask this court to go quite that far, but we did ask the court to make sure that the analysis of these kinds of claims is rigorously cabined within the confines of traditional equal protection analysis, which means you've got to have good comparators, and all you need to have is a rational basis. And it is not legitimate to ask for more, nor is it legitimate to submit that kind of question to a jury. As I said before, if the facts are arguable, the inquiry's over. And I see my time has just expired. If there are any further questions, I'll be glad to answer them. We'll get you back in rebuttal. Thank you. Mr. Goldhaber. Good morning, Your Honors. My name is Douglas Goldhaber. I am the attorney for the appellee in this matter, Corporal Thomas Skrutsky of the Pennsylvania State Police. How is this case different from Waraker on the retaliation for going up the chain claims? Your Honor, I believe when Corporal Skrutsky complained about these matters, which we believe to be a public concern, he was not reporting them in the course of his official duties. He was not reporting them up the chain of command. You know, there's an argument that maybe if what you do is take off your uniform, call a press conference, and say that there's all these things going on and I'm speaking to you as a citizen, maybe you can get around Garcetti and Waraker. But at this point, he was complaining internally about things that were going on internally. There were legitimate claims and a jury found in your favor. But there's, you know, unfortunately you suffer from bad timing on those. And so then the question becomes, Gesundheit, you still got one matter left that the jury found in your favor, and that's the retaliation for having filed the December 15, 2003 lawsuit. But, as Mr. Knorr points out, the evidence that you had to put in for what is now disallowed was so significant, and the jury award, Gesundheit, was one for all. You at the very least have to remand for damages, and it would seem under our Rush case, the 1997 case, that you pretty much have to remand, unfortunately, for you for a new trial. That's if the court does agree that the Garcetti issue in this case was decided incorrectly by the jury. First, Your Honor, I would contend. No, no, the question is beyond that. The question is why it was sent to a jury in the first place under Garcetti, because he never made any complaints except in the chain of command. He never made any public relations type of complaint about this. He never, newspaper, and all the evidence would indicate that troopers are required, according to the rules and regulations, to report things that are allegedly inappropriate. So how do you get outside of Garcetti in the facts of this case? Well, first of all, to answer the court's first question, how this got to the jury. Specifically, it got to the jury because the Pennsylvania Attorney General's Office requested that Judge Muir submit this question to the jury. Prior to the submission of this question to the jury, there was a discussion at Sidebar, which is set forth in the appendix, whereby Senior Deputy Attorney Sarah Yerger specifically stated to the Honorable Malcolm Muir that she believed that this was a factual question, a factual determination for the jury to make. Was Corporal Skrutsky, when he complained about these matters of public concern, doing so in furtherance of his official duties, or was he doing so in the capacity of a private citizen? The Attorney General's Office specifically asked. Extremely difficult for us. I don't think you can prove in any way. So I would say, as a matter of law, he was acting in the chain of command and not as a private citizen. I mean, as I said, I participated in discussions and public forums on this, and the way I said to you is maybe the only way that he could get around Oraker and Garcetti. Well, first of all, Corporal Skrutsky, there's no question, was not a criminal investigator. He was not an internal affairs investigator. He was a patrol supervisor. His responsibilities. But he saw things. I don't know how you get around Oraker. I just don't know how you do it, quite simply. And I'm sympathetic to you. I'm not trying to be. It's actually bad. Well, I think it's similar to a question that this panel had asked one of the prior arguments up here, that if it's a close call, should it go to the jury? I think in this case, it is a close call. What's close about it? He never made any complaint except in the chain of command. But that's the thing. He never made any official complaints. He never filed a report. He never filed a memorandum. If, in fact, he was doing this in furtherance of his official duties, he would have submitted a formal report setting forth what he believed to be improper and illegal conduct. Let's assume that that's the case with Garcetti. But Oraker, two individuals claim that the way things were being done at the shooting range violated internal policies. And they were retaliated against. But, first of all, I believe the Foraker court did state that workplace reporting relating to non-job issues is still protected. In that case, I believe that did fall within the coverage of their official duties. Here, as I stated before, Corporal Skrutsky was solely a patrol supervisor. His duties were to assign patrol shifts for traffic patrol and to supervise to make sure those patrols were done. For example, when he was told to find someone in effect having a drinking problem or DUI, and he said, I'm not going to do it, how's that not within the chain of command? The chain of command, I believe, is when an official complaint is made. Corporal Skrutsky testified that when he went to Sergeant Fawcett with regard to the actions of Lieutenant Bryce, he did not do so as a corporal. He did not do so as a member of the state police. He did so because he thought the actions were egregious, and he didn't know what to do. Well, he did it as a trooper, though. He didn't do it as a citizen. Foraker and Garcetti are very clear that if you're acting within the scope of your employment and you're not taking it to the public, it's not a First Amendment claim. But that's the key element here. Was this within the scope of his employment? He was not a criminal investigator. He was not an internal affairs investigator. It was certainly within the scope of his employment as to how he should write something up that he disagreed with. But he never wrote it up. Aren't troopers, by regulation, required to report any inappropriateness? That's the whole point. He didn't write it up. And because he didn't write it up, he was retaliated against, is what you told the jury, and you prevailed. I don't believe he was retaliated against for not writing it up. He was retaliated against because he mentioned it in any fashion. That was our contention. If he had written it up and memorialized this. He was retaliated against because he didn't obey the order to do it. Because he did not obey the order to commit what we believe to be an illegal act. Correct. Yes. Well, you had a post-deprivation union proceeding which could remedy any discipline which was meted out to him for alleged violations of state trooper law regulations. But this record does not reflect that there's any public display here or public interest in what was going on in the employment of the state police. Well, I believe there's incredible public interest. When you have a lieutenant, what is supposed to be a highly respected officer of the Pennsylvania State Police, the oldest law enforcement agency in the country, asking people under him, whether they're under him or not, to falsify reports in one case to implicate a trooper who did nothing wrong. That was all within the state police. None of this went to the newspaper. None of this went to a public forum. It happened during work hours in the workplace. Let me ask you this. Officer Skrutsky comes to you while this is going on and says, I don't know what to do. And I'm being retaliated against for things that are going on and that every time I complain, life gets worse. What would you advise him in light of Four Acre and in light of Garcetti today? As an attorney, Your Honor? Yes, sir. Given the court's statement a few moments ago, I would advise him to take off his uniform, put on civilian clothes, and hold a press conference. Well, that holds some problem, too. You know, that might take him out of Garcetti, but it might not cure other problems which can arise. But that never happened in this case. In this case, all we have is an internal dispute as to what was appropriate or inappropriate. Let me ask this. What fundamental property interest, aside from lack of overtime, was he denied by the state police? Well, Your Honor, I don't believe with regard to the substantive due process claim. That is solely a focus on the fundamental property interest. Judge Muir of the District Court, I believe, correctly found that a plaintiff may maintain a claim of substantive due process violations upon allegations that the government deliberately and arbitrarily abused its power. Allegations that the government actions in a particular case were motivated by bias, bad faith, or improper motive, such as partisan political reasons or personal reasons, may support a finding of substantive due process violations. And I believe there was a sufficient basis here to establish that these four defendants arbitrarily and with ill will abused the power that they had. But what did he suffer? What was the constitutionally fundamental property interest that he lost by reason of speaking out? Well, he lost the receipt of overtime which he had received previously. Is that a constitutional right to have overtime? It's not a fundamentally protected property interest. Not under the 14th Amendment. No, but I believe Judge Muir, in this case, when he issued his ruling in the summary judgment, correctly found that when you have bias, when you have ill will, when you have prejudice, in such a manner here that shocks the conscience, that Corporal Strutsky did and the jury found as well, had a substantive due process violation. Well, it might shock the conscience, but he had no constitutional right as a state trooper to work overtime. No, but he did have a constitutional right not to be the subject of deliberate and arbitrary abuse of power by those who had command of him. Yeah, but he's got to suffer some injury by reason of that which is recognized by the federal constitution. You file a federal suit, not a state suit. And the question is, what did he lose by reason of this arbitrary power? What fundamental property interest did he lose which is recognized that you're entitled to under the federal constitution? Well, I understand the court's and prior court's rulings that employment is not a fundamental property interest. But I believe once you have that employment and this sort of gets involved with the equal protection argument, you have a right to be treated properly. You have a right not to be the victim of an arbitrary and deliberate abuse of that power. Once he had that employment, and the employment was not taken away from him. What was taken away from him is the overtime. What was taken away from him is the money and the proceeds he had received from the previous years working in that position. I'm aware of no case which has ever said that you have a federal right to overtime. You may have a state right. And he exercised that through the union arbitration. And he went through the arbitration, and that was settled or whatever happened. Well, the arbitration, as the court is well aware, gets into procedural due process claim, which the jury found against all of the appellants except for one, Trooper Rebecca Warner. The problem with the union procedure as put in place with regard to Corporal Strutsky is that we believe, and I believe the jury found in our favor, that that procedure was biased, that that procedure was corrupt. Then go sue the union. But he had a post-discipline grievance procedure available to him that he exercised. And if the union did not operate properly, then he could sue them in state court for unfair, improper representation. But he had a post-deprivation proceeding, didn't he? The fact that there's a proceeding, Your Honor, I don't believe facially establishes that he had procedural due process. It's similar to a house of cards. A house of cards has the structure of a house, the shape of a house. The problem is you touch it, it falls down. Why? It's not a real house. Here, the union representative he had, I believe a major circus, was actually under, at least for a period of time, the direct supervision of Lieutenant Wanda Gilbert, the person who conducted the investigation of Corporal Strutsky. Corporal Strutsky testified that that union procedure was settled without his prior knowledge and without his express consent. Even if that's true. Let's say it's true. How is that a federal claim? You're in federal court here. You're not in state court. Certainly. But he was denied the procedural due process that he was entitled to. Well, the process was, no, but you said the process was there. You say the process broke down. Was it operative? The process was there. That's all we could turn with. If the process did not operate properly, then you have a perfectly good suit in state court for unfair representation. But if the process is corrupt and the process is biased from the start. That's not a federal claim. Then there's no process to begin with as our contention. What about the Dykes case? In the Dykes case, they claimed something like what you're saying. The whole thing was a sham, quote, unquote. How do you get around Dykes? Because in this case, Corporal Skrutsky didn't even have, I believe that's case different because the litigant participated in those proceedings. Here, Major Sarkis settled this case without the knowledge of Corporal Skrutsky. If the ability is there to settle the case without the knowledge of the claimant, of the participant, then that's not him participating or even being able to participate in that claim. Therefore, he is denied procedural due process. The union had that right under the collective bargaining agreement, didn't it? They had that right. And he's a member of the union. He is a member of the union. The union had that right under the collective bargaining agreement. That's what the union representative testified to, Your Honor. Can I go back to one other thing? Certainly. If we disagree with you on the First Amendment claim, the First Amendment retaliation claim, and we need to remand, I mean, I think we need to remand on the issue of damages. But do you think as well? What's your position on having to retry the merits? I don't believe the merits of the case need to be retried at all, Your Honor. Obviously, we disagree with the remand period. But how do you get around Rush? I mean, I don't. Your Honor, with all due respect, the Attorney General's Office had an opportunity to review the special verdict questions prior to the presentation of the jury. The first seven questions related to the retaliation for going up the chain issues. And then the questions like eight and nine, I believe it was, are retaliation for filing the December 2003 lawsuit. And it seemed like the evidence came in there. I don't know how you can separate out the bad from the good. Your Honor, we believe the appellants. When I say bad, I mean bad in quotes. Yes, Your Honor. That which is precluded by Garcetti slash 4 Acre. We believe the appellants waived their right to claim that, Your Honor. They had an opportunity to review the special verdict questionnaire prior to submission. They did not object to that, Your Honor. I understand they didn't object to that now. But in light of 4 Acre, it would seem that if we send it back, it seems like we have to send it back for a retrial, unfortunately. As I said, I have sympathy for you. Obviously, I respectfully disagree, Your Honor. Okay. Let's hear from Mr. Norr if we could. Thank you, Your Honor. Mr. Norr, obviously some bad things went on here. Some things went on that one hopes as a citizen that they're ultimately cleaned up. If this goes back, aren't these things going to come out again? Well, I'm not sure what things have occurred. Certainly the retaliation for the 2003 suit. But even when they go back, aren't you going to be able to put in evidence as to what was done to harass this individual? Before the lawsuit was filed? I think that's highly questionable. And let me say that to the extent that that evidence would come in, it might have a very different effect on the ultimate verdict. Because under this court's decision in Laboon, for example, if you show that an individual employee had a bad relationship with their supervisor before they filed the lawsuit, and that bad relationship continued after the lawsuit, it doesn't reinforce causation. It undermines causation. So even if the same evidence came in, it might have a very different effect on the ultimate outcome. Where is Trooper Skreski's station now? I believe that he is still at the Dunmore station. He's been promoted to sergeant, and I believe he may be at the Dunmore station, yes. Okay, thank you. Well, the fact that he's promoted to sergeant also would militate against any allegation that he's being retaliated against. I would think so. Yeah. Well, that's for the jury. I have no further questions. And I have nothing further. Could I ask counsel to step up to the podium, if they would come up here, please? Sure. And, Linda, can you shut this off? Okay. Both of us, Your Honor. Come on up. Thank you.